In re FOXMEYER CORPORATION; Foxmeyer Drug Company; Healthcare Transportation System, Inc.; Merchandise Coordinator Services Corporation; Foxmeyer Software, Inc.; and Healthmart, Inc., Debtors.

Bart A. Brown, Jr., as Chapter 7 Trustee, Plaintiff,

v.

General Electric Capital Corporation, the CIT Group/Business Credit, Inc., Bank America Business Credit, Inc., Heller Financial, Inc., La Salle Business Credit, Inc., Sanwa Business Credit Corp., the Bank of New York Commercial Corp., Corestates Bank,

N.A., FSB Business Finance Corp., First National Bank of Boston, Nationsbank of Texas, N.A., BTM Capital Corp., Gibraltar Corp. of America, and National City Commercial Finance, Inc., Defendants.

Bankruptcy Nos. 96–1329(MBM) to 96–1334(MBM).
Adversary No. A97–34(MBM).

United States Bankruptcy Court, D. Delaware.

March 7, 2003.

See also 286 B.R. 546.

Mark Minuti, Wilmington, DE, Thomas L. Ambro, Richards, Layton & Finger, Wilmington, DE, for Foxmeyer Corp.

Danielle Kathleen Yearick, Tybout, Redfearn & Pell, Wilmington, DE, David M. Friedman, Donald J. Detweiler, J. Kate Stickles, Jeremy W. Ryan, Tara L. Lattomus, Saul Ewing, LLP, Wilmington, DE, John C. Phillips, Jr., Joseph J. Farnan, III, Stephen W. Spence, Phillips, Goldman & Spence, Wilmington, DE, for Bart A. Brown, Jr., trustee.

### MEMORANDUM AND ORDER OF COURT [1]

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

AND NOW, this **7th day** of **March, 2003,** upon consideration of the issue of whether Fox Drug and Fox Corp. can be combined for purposes of the Trustee's

fraudulent conveyance claims, which claims comprise the remainder of the instant adversary proceeding, and, more particularly, whether such combination can be effected via an application of the doctrine of piercing of the corporate veil, barring which, as the Court held in its November 19, 2002 ruling in the instant matter, such combination will not be permitted, see Nov. 19, 2002 Mem. Op., at 57; and upon consideration of the pre-trial memorandums of the Trustee and the Defendants, as well as their joint pre-trial order and the numerous exhibits produced by both sides both before and during a trial regarding the veil-piercing issue; and subsequent to notice and the trial on the veil-piercing issue held on February 5, 2003, it is **hereby ORDERED, ADJUDGED, AND DECREED** that Fox Drug and Fox Corp. **CANNOT BE COMBINED** via a piercing of the corporate veil, which means that the separate corporate forms of Fox Drug and Fox Corp. must be respected for all purposes in the instant adversary proceeding. The Court rules as it does for the reasons set forth below.

### I.

The Court, as recounted in its November 19, 2002 decision, understands the Trustee to argue that the Defendants engaged, as transferees, in one integrated transfer of property on June 19, 1996, from, argues the Trustee, both Fox Drug and Fox Corp., which integrated transfer amounted to $773 million in property, see Nov. 19, 2002 Mem. Op., at 45, notwithstanding that the Defendants only received $575 million of such property as a result of such transfer, see Id. at 6 & 28. The

---

1. The Court will utilize herein all of the abbreviations that it utilized in its November 19, 2002 Memorandum Opinion for the instant adversary proceeding without further description or explanation of the same. The Court also draws liberally from its Statement of Facts and findings and conclusions that are set forth in such opinion. Therefore, the reader of the instant Memorandum and Order of Court, for his or her edification, is advised to refer to such earlier opinion of the Court.

remaining $198 million of such property as a part of such transfer went to Avatex, Fox Corp.'s parent corporation; the $198 million portion of such alleged integrated transfer that went to Avatex was formally effected via the Dividend, *see Id.* at 7. The Court has already held that the Defendants gave $575 million in value in return for that which they received via the June 19, 1996 Transactions, *see Id.* at 65, which value was, at least formally, given to Fox Drug, *see Id.* at 5–6. The parties and the Court have, at least thus far, proceeded in the instant adversary proceeding under the presumption that Avatex did not give any value for the $198 million in property that it received via the Dividend. Based upon the foregoing, the Trustee maintains that (a) Fox Drug and Fox Corp., on a combined basis, failed to receive either reasonably equivalent value or a fair equivalent for that which they transferred via the June 19, 1996 Transactions, and (b) he consequently has claims for constructive fraudulent conveyance under both the Bankruptcy Code and New York law and, in particular, under 11 U.S.C. § 548(a)(1)(B) and NYDCL §§ 273–275 respectively.

The $575 million of property that the Defendants received via the June 19, 1996 Transactions was in the form of the Security Interests in property that, as of June 19, 1996, indisputably resided in, that is to say was indisputably titled in, Fox Drug. *See Id.* at 6–7. As for the $198 million of property that was transferred to Avatex via the Dividend, $190 million thereof was indisputably titled in Fox Corp. as of June 19, 1996, while the remaining $8 million thereof was indisputably titled in Fox Drug as of the same date. *See Id.* at 7–8. Therefore, if the transfers that comprised

the June 19, 1996 Transactions are integrated—which issue presently remains open for resolution—and Fox Drug and Fox Corp. can be combined such that the assets of one were the assets of the other, then it would certainly appear that (a) those combined Debtors received $198 million less in value than that which they transferred out themselves via such transfers, and (b) the Trustee has viable constructive fraudulent conveyance claims against the Defendants predicated on such $198 million shortfall. However, and assuming the applicability of such integration, if Fox Drug and Fox Corp. cannot be combined such that the assets of one were the assets of the other, then the only viable constructive fraudulent conveyance claims which the Trustee would possess against the Defendants would revolve around Fox Drug's transfer of $583 million in property as compared to an inflow in value to Fox Drug of $575 million, *see Id.* at 45–46; the Court has yet to resolve (a) whether, by virtue of the $8 million differential in inflow and outflow of value that Fox Drug experienced, Fox Drug failed to receive either reasonably equivalent value or a fair equivalent for that which it transferred, and (b) whether, consequently, Fox Drug engaged in a constructive fraudulent conveyance when viewed in isolation from the rest of the Debtors.[2]

The Court, in its November 19, 2002 decision, neglected to apprise the parties as to why, absent a combination of Fox Drug and Fox Corp., the Trustee would only have one viable set of constructive or, for that matter, actual fraudulent conveyance claims against the Defendants, which viable claims would lay for Fox Drug's transfer of property in the amount of ei-

---

**2.** Of course, even if Fox Drug received a fair equivalent under New York constructive fraudulent conveyance law, the Trustee would still have a viable claim under such law for a constructive fraudulent conveyance if the Defendants failed to act in good faith within the meaning of NYDCL § 272. *See* Nov. 19, 2002 Mem. Op., at 45 & 60–64.

ther (a) $583 million presuming the applicability of integration, or (b) $575 million in the event that integration is not called for. The reason why, absent a combination of Fox Drug and Fox Corp., the Trustee's only viable fraudulent conveyance claims against the Defendants would lay for Fox Drug's transfers and not for those of Fox Corp. is because (a) Fox Corp. formally never transferred any property to the Defendants as part of the June 19, 1996 Transactions, *see* Nov. 19, 2002 Mem. Op., at 46 & 48, (b) the only thing "which the Trustee can recover from the Defendants via his fraudulent conveyance claims is set forth under [11 U.S.C.] § 550(a)(1), to wit the property that was transferred to the Defendants or, if the Court allows, the value of such property," *see Id.* at 48 (citing 11 U.S.C.A. § 550(a)(1)), (c) the only thing that Fox Corp. did with respect to the Defendants vis-a-vis the June 19, 1996 Transactions was to incur an obligation to the Defendants in the form of a guarantee of Fox Drug's indebtedness to the Defendants, *see* Nov. 19, 2002 Mem. Op., at 4, and (d) such guarantee obligation on Fox Corp.'s part, even if the same is avoidable as a fraudulent conveyance, cannot result in any recovery to the Trustee under § 550(a)(1) given that only transfers of property are remediable under § 550(a)(1).

Because the issue of whether Fox Drug and Fox Corp. can be combined constitutes, in the Court's view, a threshold issue bearing on the resolution of the Trustee's fraudulent conveyance claims, the Court directed, in its November 19, 2002 ruling, that a trial be held on such issue prior to a trial on other outstanding issues in the instant adversary proceeding. The Court held as well, and as set forth on the first page of the instant Memorandum and Order of Court, that the combination of Fox Drug and Fox Corp. can only be effected via an application of the doctrine of piercing of the corporate veil. The Trustee maintains that such doctrine can be utilized and that Fox Drug and Fox Corp. thus can be combined such that the assets of one were the assets of the other. The Defendants vigorously disagree and argue instead that no basis exists for a piercing of the corporate veil in the instant adversary proceeding. For the reasons set forth below, the Court concludes that Fox Drug and Fox Corp. cannot be combined via a piercing of the corporate veil.

## II.

As an initial matter, the Court holds that the corporate veil which the Trustee formally seeks to pierce is that of Fox Drug and not that of Fox Corp. given that Fox Corp. is the parent corporation of, and thus the shareholder in, Fox Drug. *See Pauley Petroleum Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del.1968) ("upon a proper showing corporate entities as between parent and subsidiary may be disregarded and *the ultimate party in interest, the parent, be regarded in law and fact as the sole party* in a particular transaction"); *C.R. Bard, Inc. v. Guidant Corporation*, 997 F.Supp. 556, 559 (D.Del. 1998) ("a court may attribute the actions of a subsidiary to its parent and ignore corporate boundaries if the court finds that the subsidiary is a mere 'alter ego' of the parent"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 267 (D.Del.1989) (corporate veil piercing involves "the question of whether a parent corporation should be subjected to liability for a subsidiary's obligations"); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831, 839 (D.Del.1978) (same). The Court also notes at the outset that the Trustee brings his request for veil piercing so that the assets of Fox Drug and Fox Corp. may be viewed, for purposes of the Trustee's fraudulent conveyance actions,

as having been owned by just one entity on June 19, 1996, which date is the date of the transfers by such Debtors which the Trustee seeks to avoid as having been fraudulent. More particularly, the Trustee seeks to veil pierce so that the $190 million of property transferred by Fox Corp. to Avatex on June 19, 1996, may be viewed, as of that date, as having been transferred by the same Debtor as that who transferred, on the same date, the $8 million in Fox Drug property to Avatex as well as the $575 million in Fox Drug assets to the Defendants. Combining the preceding observations and holdings, the Court concludes that the Trustee wishes to pierce the corporate veil of Fox Drug so that (a) Fox Drug's assets may be viewed, as of June 19, 1996, as having been owned by Fox Corp., (b) Fox Corp. may be viewed as having transferred, via one integrated transfer on June 19, 1996, a total amount of property valued at $773 million, $575 million of which was conveyed to the Defendants and $198 million of which was conveyed to Avatex, (c) Fox Corp. rather than Fox Drug is viewed as having received the $575 million in value that the Defendants conveyed in return for the Security Interests which they obtained, and (d) he may avoid as fraudulent Fox Corp.'s transfer of such $773 million in property.

■ The parties agree, and the Court sees no reason to disagree, that the law of Delaware governs the question of whether Fox Drug's corporate veil should be pierced. *See* Joint Pretrial Order, at pt. V, ¶ 2. However, the parties disagree as to the test that is to be applied for determining whether a corporate veil should be pierced under Delaware law. The Trustee cites to several cases, including, *inter alia*, *Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2nd Cir.1995), for the proposition that, to pierce the corporate veil under Delaware law, "a plaintiff must show (1) that the

parent and the subsidiary[, in a parent corporation/subsidiary corporation context,] 'operated as a single economic entity[,]' and (2) that an 'overall element of injustice or unfairness ... [is] present.'" *Id.* at 1457 (quoting *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1085 (D.Del.1990), and also citing *Mabon, Nugent & Co. v. Texas Am. Energy Corp.*, 1990 WL 44267 at *5 (Del.Ch. 1990), and *Harco National Insurance Co. v. Green Farms, Inc.*, 1989 WL 110537 at *5 (Del.Ch.1989), for the same proposition; each of the cases dealt with Delaware law). The Court does not understand the Defendants to disagree with the first prong of the two-prong test set forth in *Fletcher*, which prong encapsulates the list of factors typically to be considered when undertaking a corporate veil-piercing analysis, to wit

factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Harco*, 1989 WL 110537 at *4 (quoting *United States v. Golden Acres, Inc.*, 702 F.Supp. 1097, 1104 (D.Del.1988)); *see also Harper*, 743 F.Supp. at 1085 (repeating *Golden Acres* quotation set forth in *Harco* ); *Fletcher*, 68 F.3d at 1458 (repeating *Golden Acres* quotation set forth in *Harco* ). However, with respect to the second prong of such test, the Defendants maintain that a corporate veil may only be pierced under Delaware law upon a show-

ing that the corporation whose veil is to be pierced was "a sham and exist[ed] for no other purpose than as a vehicle for fraud." *Wallace v. Wood,* 752 A.2d 1175, 1184 (Del. Ch.1999). Thus, the Defendants argue that fraud or a sham must be shown rather than mere injustice or unfairness before a court may pierce a corporate veil. The Court, upon review of the relevant case authorities, concludes that fraud or a sham, strictly speaking, need not be shown to justify the piercing of a corporate veil under Delaware law. *See Mobil Oil,* 718 F.Supp. at 268 (" 'Fraud is frequently cited as a basis on which to pierce the corporate veil, but it is not the only one' "); *Fletcher,* 68 F.3d at 1458 (citing *Harco,* 1989 WL 110537 at *5, to the effect that "a showing of fraud or wrongdoing is not necessary under an alter ego theory, but the plaintiff must demonstrate an overall element of injustice or unfairness"). However, the requisite injustice or unfairness referred to in *Fletcher* is also not simple in nature but rather something that is similar in nature to fraud or a sham. *See Mobil Oil,* 718 F.Supp. at 268 (corporate veil may be pierced " 'only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration[s] … are involved' "); *Wallace,* 752 A.2d at 1184 (quoting *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 729 (Del.Super.Ct.1996), to the effect that " 'fraud *or similar injustice* ' " is required). Therefore, the Court views as largely superficial the difference in the parties' positions as to what must be shown in order to pierce a corporate veil under Delaware law—"fraud *or something like it is required,*" *Mobil Oil,* 718 F.Supp. at 268 (emphasis added).

■ Furthermore, the fraud or similar injustice that must be demonstrated in order to pierce a corporate veil under Delaware law must, in particular, "be found in the defendants' use of the corporate form." *Id.* at 269; *see also Wallace,* 752 A.2d at 1184 ("Piercing the corporate veil … 'requires that the corporate structure cause fraud or similar injustice' "); *Outokumpu,* 685 A.2d at 729 (same); *Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1304–1305 (D.Del.1990) (same); *ACE & Co., Inc. v. Balfour Beatty PLC,* 148 F.Supp.2d 418, 425 (D.Del.2001) (same); *C.R. Bard,* 997 F.Supp. at 559–560 (same); *Chaplake Holdings, Ltd. v. Chrysler Corp.,* 1995 WL 653510 at *4 (Del.Super.Ct.1995) (same); *In re Hillsborough Holdings Corp.,* 166 B.R. 461, 469 (Bankr.M.D.Fla. 1994) (same, interpreting and applying Delaware law). Therefore, "[t]he underlying cause of action[, at least by itself,] does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." *Mobil Oil,* 718 F.Supp. at 268; *see also Outokumpu,* 685 A.2d at 729 ("The 'injustice' must be more than the breach of contract alleged in the complaint"); *Sears,* 744 F.Supp. at 1305 ("Thus, the alleged fraud or inequity must be distinct from the tort alleged in the complaint").

■ Additionally, a court shall only pierce a corporate veil "in order to prevent fraud, illegality, or injustice," or the adverse effects thereof. *United States v. Del Campo Baking Mfg. Co.,* 345 F.Supp. 1371, 1378 (D.Del.1972); *see also Zubik v. Zubik,* 384 F.2d 267, 272 (3rd Cir.1967) (same); *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1521 (3rd Cir.1994) (same); *Japan Petroleum,* 456 F.Supp. at 839 ("subsidiary's separate existence will be disregarded only when this is in the interest of justice, [e].g., when it is *necessary to avoid* fraud or inequity"); *Pauley Petroleum,* 239 A.2d at 633 (corporate veil pierced "only in the interest of justice"). Therefore, that fraud or similar injustice

relative to the use of a corporate form can be shown is immaterial, and thus will not constitute that which is required to pierce a corporate veil, if such fraud or injustice has already been remedied.

■ Finally, the parties disagree as to the appropriate standard of proof by which one must prove a case for a piercing of the corporate veil under Delaware law, with the Trustee understandably lobbying for a preponderance of the evidence standard and, as the Court would expect, the Defendants maintaining that a clear and convincing evidence standard is the rule. As an initial matter, the Court agrees with the Trustee that (a) the sole case upon which the Defendants base their position for a clear and convincing evidence standard, the Third Circuit's decision in *Kaplan,* is not binding upon the Court in the instant matter given that *Kaplan* dealt with Pennsylvania law rather than Delaware law, (b) there does not appear to be any relevant caselaw that applies Delaware law wherein the clear and convincing evidence standard is utilized, and (c) the *Hillsborough* decision, even though it was rendered by other than a Delaware court, arguably construes Delaware law such that a preponderance of the evidence standard is applicable to veil piercing cases, *see Hillsborough,* 166 B.R. at 468. However, and unfortunately for the Trustee, (a) the *Hillsborough* court, in practically the same breath that it uttered its pronouncement approving of a preponderance of the evidence standard, held that "[t]hose who seek to pierce the corporate veil ... carry a very heavy burden," *Id.,* (b) the Court finds it nonsensical to suggest that the most minimal evidentiary standard of a preponderance of the evidence is equivalent to "a very heavy burden," (c) the relevant cases construing Delaware law seem to uniformly suggest that the standard of proof for veil piercing is at least elevated relative to the minimal preponderance of the evidence standard if not a clear and convincing evidence standard, *see, e.g., Wallace,* 752 A.2d at 1183 ("'Persuading a Delaware court to disregard the corporate entity is a difficult task'"); *Harco,* 1989 WL 110537 at *4 (same), and (d) the Court disagrees with the Trustee that those veil piercing cases that adopt a preponderance of the evidence standard are better-reasoned than those which adopt a clear and convincing evidence standard. Therefore, the Court holds that the appropriate standard of proof by which one must prove a case for a piercing of the corporate veil under Delaware law is, if not a clear and convincing evidence standard, at least somewhat greater than merely a preponderance of the evidence standard. Having so held on the issue of standard of proof, the Court also concludes, for the reasons set forth below, that the Trustee does not even satisfy the minimal preponderance of the evidence standard when attempting to prove his case for a piercing of the corporate veil of Fox Drug.

### III.

For the requisite fraud or similar injustice necessary to pierce the corporate veil of Fox Drug, the Court discerns two theories upon which the Trustee appears to rely in order to satisfy such requirement, namely that (a) the trade creditors of Fox Drug were misled by officers of Fox Corp. into believing that they could rely upon Fox Corp. for payment of their claims against Fox Drug, and (b) the June 19, 1996 Transactions effected a drain of assets from both Fox Drug and Fox Corp. The Court notes that it is not entirely certain that its preceding interpretation of the Trustee's arguments truly capture their essence. However, by virtue of footnote 1 on page 9 of the Trustee's Pretrial Memorandum, as well as the language in the last paragraph on page 13 of the same

document, the Trustee appears to rely on what the Court will refer to hereafter as the "misleading and reliance" theory. Likewise, the gist of the Trustee's analysis beginning with the second paragraph on page 12 of his Pretrial Memorandum up to the last paragraph on page 13 thereof is that the June 19, 1996 Transactions effected a drain of assets from both Fox Drug and Fox Corp. on a combined basis, and that such adverse effect constitutes an injustice sufficient to merit a piercing of Fox Drug's corporate veil. Furthermore, the Court is quite certain, after having thoroughly reviewed the Trustee's Pretrial Memorandum, that the veil piercing requirement of fraud or similar injustice is not discussed elsewhere therein; likewise, the Court is unaware of any other arguments that the Trustee has advanced, either in writing or orally, regarding the fraud or similar injustice requirement. Therefore, the Court, believing that it has isolated the sole theories upon which the Trustee relies to establish the presence of fraud or similar injustice, will proceed to address such theories *seriatim*.

**A.** ***Were Fox Drug's trade creditors misled by Fox Corp. into relying on Fox Corp. for payment, and, assuming that they were, does such misleading conduct and reliance constitute fraud or similar injustice necessary to pierce Fox Drug's corporate veil?***

 The Trustee appears to predicate his "misleading and reliance" theory upon case authority that emanates from state courts in Texas. *See* Trustee's Pretrial Memo., at p. 9, n. 1 (citing to *Edwards Co., Inc. v. Monogram Industries, Inc.*, 700 F.2d 994, 998 (5th Cir.1983)); *Edwards*, 700 F.2d at 998, *modified by* 730 F.2d 977 (5th Cir.1984) (citing only to *Hanson Southwest Corp. v. Dal–Mac Construction Co.*, 554 S.W.2d 712, 71[7–718]

(Tex.Civ.App.1977), for "misleading and reliance" theory). This Court can accept as a basis for veil piercing that "a creditor has been misled in some manner into reliance upon the parent corporation for the subsidiary's debts ... [because t]his, of course, is but another form of fraud," *Edwards*, 700 F.2d at 998, which fraud goes to the use of a subsidiary's corporate form. However, such "misleading and reliance" theory is applicable only if (a) a parent corporation engages in misleading conduct vis-a-vis a subsidiary corporation's creditors, *see Id.* at 999; *Edwards*, 730 F.2d at 980; *Hanson*, 554 S.W.2d at 717–718, and (b) such subsidiary corporation's creditors act to their detriment because of such misleading conduct, *see Edwards*, 730 F.2d at 981–983 (recounting decision in *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 341 (Tex.1968), as well as citing to *Siboney Corp. v. Dresser Industries, Inc.*, 521 S.W.2d 639, 642–643 (Tex.Civ. App.1975), and noting in the parenthetical to such citation that, *inter alia*, corporate veil not pierced therein because "plaintiff did not advance credit to subsidiary on basis of parent's guarantees"); *Hanson*, 554 S.W.2d at 717. Therefore, did Fox Corp. mislead Fox Drug's trade creditors into believing that Fox Corp. would answer for such creditor's claims against Fox Drug, and did Fox Drug trade creditors actually rely upon—that is, did they take action or refrain from taking action because of—such misleading conduct? As well, and perhaps more importantly, presuming, *arguendo*, that the trade creditors of Fox Drug were misled into relying upon Fox Corp. for payment of their claims against Fox Drug, does such misleading conduct and reliance constitute the fraud or similar injustice that is necessary to pierce Fox Drug's corporate veil?

Addressing first the latter issue, the Court concludes that, even if the trade

creditors of Fox Drug were misled into relying upon Fox Corp. for payment of their claims against Fox Drug, which inequity would generally constitute an injustice if not fraud that would warrant a piercing of Fox Drug's corporate veil, such inequity could no longer constitute such fraud or injustice because (a) such inequity has been fully remedied by virtue of the Court's entry on June 9, 1998, of the Order Granting Substantive Consolidation Motion, and (b) fraud or similar injustice relative to the use of a corporate form, as set forth above, is immaterial, and thus will not constitute that which is required to pierce a corporate veil, if such fraud or injustice has already been remedied. The Court concludes that its granting of substantive consolidation remedies entirely the specific injustice alleged by the Trustee to have been visited upon Fox Drug's trade creditors by Fox Corp.'s alleged misleading conduct because, by virtue of such substantive consolidation, such trade creditors are now entitled to share in the assets of Fox Corp. *See* June 9, 1998 Order Granting Subst. Cons.Mot., at 2–3. The Court can anticipate the Trustee contending that the granting of substantive consolidation as of the bankruptcy petition filing date (i.e., August 27, 1996) is a hollow remedy for Fox Drug's trade creditors because Fox Corp. dividended away $190 million worth of assets approximately two months prior to such date, which assets such trade creditors thus can no longer access for satisfaction of their claims notwithstanding substantive consolidation. However, Fox Drug creditors have a remedy for such circumstance in the event that the same arose because of fraud given that they can now share in any recovery of the dividended assets that the Trustee has obtained or will obtain via the Trustee's several fraudulent conveyance actions. Once again, the Court can anticipate the Trustee arguing that such latter remedy is also

hollow to a certain extent because, absent a combination of Fox Drug and Fox Corp. within the present adversary proceeding, the Trustee essentially cannot recover any of the $190 million in dividended assets from the Defendants for the benefit of the creditor body of Fox Corp.—which creditor body now includes the creditors of Fox Drug—via a constructive fraudulent conveyance action, at least under the Bankruptcy Code. However, the latter fact is the subject of what the Trustee may argue is another injustice alleged to have been perpetrated by Fox Corp., which alleged injustice (a) the Court notes, and significantly, was visited not only upon creditors of Fox Drug but also upon those of Fox Corp. as well, (b) is, unfortunately for the Trustee, entirely unrelated to the injustice that might have been caused had Fox Drug's trade creditors not been able to share at all in the assets of Fox Corp., and (c) shall thus be dealt with separately by the Court in part III.B below, *see infra* p. 241.

 Addressing next whether Fox Drug's trade creditors took action or refrained from taking action because of Fox Corp.'s alleged misleading conduct—that is, whether they relied upon such conduct—the Court concludes that the Trustee has failed to even preponderantly establish such necessary reliance. The Trustee argues, in particular, that Fox Drug's trade creditors extended credit to Fox Drug because they thought they could look to Fox Corp. for payment or, stated differently, that they would not have extended credit to Fox Drug if they had known that they could not look to Fox Corp. for payment. The Court finds such argument by the Trustee to be unavailing for several reasons. First, the evidence establishes that (a) the trade debt of Fox Drug in existence as of the bankruptcy petition filing date arose subsequent to the divi-

dend by Fox Corp. of $190 million worth of its assets, (b) Fox Corp. informed all of Fox Drug's trade creditors of such dividend prior to the extension of most if not all of the credit that resulted in the trade debt that existed as of the bankruptcy petition filing date, and (c) those trade creditors that extended such trade credit thus did so even though they knew that Fox Corp. had transferred a substantial portion of its assets away for no return consideration. Because such trade creditors acted as they did notwithstanding the information that they possessed at the time of such action regarding the transfer of assets by Fox Corp., the Court does not find credible either the Trustee's witness' testimony or the position of the Trustee that Fox Drug's trade creditors would not have extended credit to Fox Drug had they known that they would not have been able to look to Fox Corp. for payment— quite simply, if the assets of Fox Corp. were of such importance to Fox Drug's trade creditors, then the Court would not expect that such creditors would have continued to extend credit even after they were apprised that many of such assets had been transferred away. *See, e.g.,* Defs.' Dep. Designations, vol. 2, N. Jacobs Dep., at pp. 111–114 (deponent—also the sole Fox Drug trade creditor witness called at trial by the Trustee—discusses Dep. Ex. 3031, which exhibit was also introduced at trial and which exhibit is a 7/17/96 internal memo entitled "Foxmeyer Risk Assessment" authored by deponent as an official of Glaxo Wellcome, a trade creditor of Fox Drug; deposition testimony and exhibit make clear that deponent and trade creditor were aware of all facts regarding the Dividend on 7/17/96 and yet credit continued to ·be extended to Fox Drug in the amount of $33 million). Second, the evidence establishes that (a) the trade creditors for the Debtors' drug distribution business had contracts with Fox Drug, *see* Defs.' Dep. Designations, vol. 1, Brown Dep., at pp. 298–299, (b) none of Fox Drug's trade creditors received or even pursued obtaining guarantees from Fox Corp. for their claims against Fox Drug, and (c) such trade creditors regularly reviewed Dun & Bradstreet reports, which reports made clear that Fox Corp. was merely a holding company for its operating subsidiary, Fox Drug, *see* Pl.'s Pre–Trial Ex. 100 (D & B Rep., at p. 1384). Although the Court agrees with the Trustee that Fox Drug's trade creditors also received intermittent correspondence that arguably might have been construed as indicating that such creditors could look to Fox Corp. for payment of their claims against Fox Drug, the Court does not find credible that such creditors, or at least the lion's share of such creditors, would have (a) overlooked the fact that they had neither formally contracted with nor obtained guarantees from Fox Corp., (b) overlooked the fact that Fox Corp. was merely a holding company while Fox Drug was the operating company for the Debtors' drug distribution business, (c) overlooked the fact that they were selling pharmaceutical goods that were of no use to a holding company but were of vital use to an operating company like Fox Drug, or (d) consequently relied on such correspondence and extended credit to Fox Drug under the presumption that they could legally look to Fox Corp. for payment of their claims against Fox Drug.

▪ Finally, with respect to the issue of whether Fox Corp. misled Fox Drug's trade creditors into believing that Fox Corp. would answer for such creditor's claims against Fox Drug, the Court holds, as a matter of law, that if there was any such misleading conduct by Fox Corp., the same is actionable such that veil piercing is compelled only if Fox Corp. had an intent, by virtue of such conduct, to induce

Fox Drug's trade creditors to act or to refrain from acting. The Court holds as it does because (a) the "misleading and reliance" theory advanced by the Trustee, as set forth above, is, if proven, but another form of fraud, (b) under Delaware law, as set forth above, a corporate veil may only be pierced upon a showing of fraud or something like it, (c) under Delaware law, fraud consists of, *inter alia,* "an intent to induce the plaintiff to act or to refrain from acting," *Stephenson v. Capano Development, Inc.,* 462 A.2d 1069, 1074 (Del. 1983), (d) although, under Delaware law, it is not necessary in an action at equity for relief from fraud—e.g., in an action to pierce a corporate veil—to demonstrate that the defendant knew or believed that his misrepresentation was false, *see Id.; Gilbane Building Co. v. Nemours Foundation,* 606 F.Supp. 995, 1002 n. 10 (D.Del. 1985); *Harco,* 1989 WL 110537 at *5, relief from having to prove such "knowledge" element of common law fraud is "the only departure from the common law elements" in such an action, *see Stephenson,* 462 A.2d at 1074; *Harco,* 1989 WL 110537 at *5, (e) under Delaware law, therefore, equitable relief in the form of a piercing of the corporate veil should only be available via an application of the "misleading and reliance" theory if, in the case of a parent/subsidiary corporation relationship, a parent intended to induce a subsidiary's creditors to act or to refrain from acting. Unfortunately for the Trustee, the Court concludes that the Trustee has failed to preponderantly prove, let alone to establish by a higher standard of proof, that Fox Corp. officials, by virtue of what the Court agrees were confusing representations that were made to Fox Drug's trade creditors as to whom they could look to for payment, intended to induce such creditors to extend credit to Fox Drug. The Court concludes as it does because (a) the evidence establishes that officials of the Debtors were themselves genuinely unaware of distinctions between Fox Drug and Fox Corp. including, *inter alia,* to whom Fox Drug's trade creditors could look to for payment, (b) it is thus at least as likely as not that such officials thought, in the first instance, that such creditors had a legal right to look to Fox Corp. for payment, and (c) it is thus at least as likely as not that such officials failed to appreciate that the effect of their aforesaid confusing representations might have been to induce such creditors to extend credit to Fox Drug where, absent such representations, they might not have extended such credit.

In light of the foregoing, the Trustee's application of the "misleading and reliance" theory to Fox Drug and Fox Corp. does not operate to supply the Court with the requisite fraud or similar injustice that will merit a piercing of Fox Drug's corporate veil.

**B.** ***Can the fraud or similar injustice necessary to pierce the corporate veil of Fox Drug be found in the fact that the cumulative effect of the June 19, 1996 Transactions was a drain of assets from both Fox Drug and Fox Corp.?***

When discussing the drain of assets from the combined Debtors and appearing to advance the same as an injustice which merits a piercing of Fox Drug's corporate veil, the Trustee makes reference to and quotes liberally from the decision in *Smoothline Ltd. v. North American Foreign Trading Corp.,* 2002 WL 31885795 (S.D.N.Y.2002). By virtue of such reference and quotation, the Court infers that the Trustee believes that the *Smoothline* decision is somehow helpful to his argument that the aforesaid drain of assets in the instant matter constitutes a relevant injustice sufficient to pierce Fox Drug's corporate veil. Unfortunately for the

Trustee, however, *Smoothline* is not helpful to the Trustee's cause. The decision in *Smoothline* can properly be cited for the proposition that fraud or injustice sufficient to pierce the corporate veil of a subsidiary or subsidiaries exists if a parent drains assets out of the same. *See Id.* at *11 (corporate veils of Smoothline and Greatsino, subsidiaries to UAL, pierced because UAL drained assets out of such subsidiaries into other subsidiaries so as to render Smoothline and Greatsino "dormant and essentially judgment proof"). However, in the instant matter evidence does not exist to the effect that Fox Corp. drained assets out of Fox Drug. Instead, the evidence establishes that Avatex, the parent to Fox Corp. and, thus, ultimately the parent to Fox Drug as well, is the entity that drained assets out of both Fox Drug and Fox Corp. via the June 19, 1996 Transactions. Therefore, such drain of assets provides an injustice for veil piercing but only if the corporate veils of both Fox Drug and Fox Corp. are pierced—i.e., only if the corporate veils of both Debtors are pierced all the way up to Avatex; such drain of assets does not provide an injustice that would support piercing only the corporate veil of Fox Drug and leaving intact the corporate veil of Fox Corp. Of course, the Court does not understand the Trustee to desire to pierce the corporate veils of both Debtors all the way up to Avatex because to do so would destroy all of the Trustee's fraudulent conveyance claims against the Defendants, which observation the Court makes because (a) such claims rely for their viability upon the adverse effect to the Debtors of the Dividend to Avatex, and (b) the effect of such Dividend disappears or is ignored if the corporate separateness of Fox Drug and Fox Corp. vis-a-vis Avatex is no longer respected via veil piercing all the way up to Avatex.

■ The decision in *Smoothline* can also properly be cited for the broader proposition that fraud or injustice sufficient to pierce the corporate veil of a subsidiary exists if a parent misuses the corporate form/veil of such subsidiary. However, the Trustee fails to demonstrate, even preponderantly, to the Court how Fox Corp. has misused the corporate form/veil of Fox Drug. As set forth in the preceding paragraph, the evidence does not demonstrate that Fox Corp. took—i.e., drained—assets from Fox Drug. As well, and as set forth in the preceding section of the instant ruling, the Court rejects the Trustee's application of the "misleading and reliance" theory, not only because any injustice that might have been effected by way of misleading conduct and reliance has been remedied, but also because intent to mislead and reliance and, thus, a misuse of Fox Drug's corporate form/veil, have not been proven. As for the fact that the particular division of assets between Fox Drug and Fox Corp. at the time of the June 19, 1996 Transactions serves to insulate the Defendants from constructive fraudulent conveyance liability under the Bankruptcy Code for the Dividend of Fox Corp. assets to Avatex (i.e., $190 million worth of the total Dividend to Avatex), the Court strains but can find no fraud or similar injustice related thereto that has been perpetrated by Fox Corp.'s misuse of the corporate form/veil of Fox Drug. In particular, the Trustee has produced no evidence, for instance, that Fox Corp. purposefully split up the assets that were involved in the June 19, 1996 Transactions between itself and Fox Drug so as to shield the Defendants from such constructive fraudulent conveyance liability—such evidence that would be indicative of such a purpose but which has not, and the Court expects could not even have

conceivably, been produced[3] is evidence to the effect that (a) the assets of Fox Drug which were taken by the Defendants as collateral in the June 19, 1996 Transactions were transferred to Fox Drug from Fox Corp. just prior to June 19, 1996, (b) the $190 million worth of assets of Fox Corp. that were dividended to Avatex on June 19, 1996, were transferred from Fox Drug to Fox Corp. just prior to June 19, 1996, (c) there was no valid purpose behind placing the "collateralized" assets in Fox Drug, and (d) there was no valid purpose for placing the $190 million worth of dividended assets in Fox Corp.

Finally, and in the event that the Court has overlooked an argument by the Trustee to the effect that the effectuation of the Dividend to Avatex constitutes a fraud or injustice that would suffice to merit a piercing only of Fox Drug's corporate veil while leaving intact that of Fox Corp., the Court holds that, quite simply, such dividend transfer will not suffice to merit such a veil piercing. The Court holds as it does because (a) the fraud or injustice necessary to pierce a corporate veil must, as set forth above, pertain to the misuse of the corporate veil sought to be pierced, (b) the Dividend of the $190 million worth of assets by Fox Corp. to Avatex, rather than relating to or, stated more aptly, arising because of the misuse of the corporate form of Fox Drug, instead relates to or arises because of the misuse of the corporate form of Fox Corp. (thus, it is a reason to pierce corporate veils up to Avatex), and (c) the Dividend of $8 million worth of assets from Fox Drug to Avatex likewise constitutes a reason to pierce the corporate veil up to Avatex rather than just of Fox Drug given that said $8 million Dividend ultimately also wound up in the hands of Avatex rather than Fox Corp. As for the adverse effect of the injustice visited by the effectuation of the Dividend of $8 million worth of Fox Drug assets, such adverse effect can also be prevented entirely without, and thus does not merit, a piercing of Fox Drug's corporate veil given that (a) the Trustee can and does seek to recover the value of such Dividend from the Defendants via the instant fraudulent conveyance claims, and (b) a combination of the Debtors is unnecessary to the success of such claims as regards such Dividend of Fox Drug's assets.

In light of the foregoing, the Court concludes that the Trustee has failed to establish the presence of a fraud or similar injustice that will suffice to merit a piercing of Fox Drug's corporate veil. Because the Trustee cannot point to fraud or similar injustice necessary to pierce the corporate veil of Fox Drug, the Court is constrained to and, thus, does deny the Trustee's request that such corporate veil be pierced, and notwithstanding whether the Trustee has satisfied the first prong of the test for veil piercing set forth *supra* at p. 235 (i.e., whether Fox Corp. and Fox Drug operated as a single economic entity, the resolution of which issue calls for a consideration of the various factors set forth *supra* at p. 235).

### IV.

■ Although the Court concludes that it need not determine whether the Trustee has satisfied the first prong of the test for veil piercing or, more particularly, whether Fox Corp. and Fox Drug operated as a single economic entity, the Court neverthe-

---

**3.** The Court frankly would not expect to find that Fox Corp. had taken measures prior to June 19, 1996, to shield the Defendants from potential constructive fraudulent conveyance liability under the Bankruptcy Code because the Court doubts that Fox Corp. cared whether the Defendants might ultimately be held so liable.

less holds that the Trustee has not carried his burden of proof on that issue either.

The resolution of whether Fox Corp. and Fox Drug operated as a single economic entity calls for a consideration of the various factors set forth *supra* at p. 235. Applying such factors to the Debtors, the Court makes the following findings:

(a) The Trustee has utterly failed to produce evidence that would even preponderantly demonstrate that Fox Corp., the dominant shareholder of Fox Drug, siphoned off funds of Fox Drug. As set forth above, it matters not for purposes of determining whether only Fox Drug's corporate veil should be pierced and Fox Corp.'s veil should be left intact that Avatex may have siphoned off funds of both Fox Drug and Fox Corp.—that Avatex may have siphoned such funds supports piercing Fox Corp.'s veil as well, which veil piercing the Trustee would most certainly resist.

(b) The Trustee has utterly failed to produce evidence that would even preponderantly demonstrate that Fox Drug simply functioned as a facade for Fox Corp. The evidence shows unequivocally that Fox Drug existed in order to carry on Fox Corp.'s pharmaceutical distribution business, while Fox Corp., as a holding company, conducted several discrete, albeit related healthcare businesses, only one of which was that which was conducted by Fox Drug.

(c) With respect to the factors of whether a subsidiary was adequately capitalized and whether the same was solvent, the Court agrees, and does not understand the Trustee to disagree, with the Defendants that such factors are only relevant from a veil piercing standpoint if such subsidiary was inadequately capitalized and/or insolvent from its inception or such adverse status was subsequently caused by acts of the subsidiary's parent. The Court also does not understand the Trustee to argue that the requisite adverse financial status of Fox Drug existed from its inception. What the Court understands the Trustee to maintain is that such adverse status of Fox Drug was created largely, if not entirely, by the June 19, 1996 Transactions and, in particular, by way of (i) the effectuation of the Dividend, and (ii) the cumulative effect of exchanging unsecured debt (i.e., that which was owed to the Citicorp Lenders and the Noteholders) for secured debt (that which was owed to the Defendants subsequent to June 19, 1996), which exchange apparently resulted in a drying up of Fox Drug's short term capital (i.e., short term credit supplied by Fox Drug's trade creditors). However, and as set forth in the first sentence of this paragraph, acts that serve to stress a subsidiary's capitalization and to impair its solvency are only relevant for purposes of a veil piercing analysis if such acts are those of such subsidiary's parent. Unfortunately for the Trustee, though, Fox Corp. did not receive the Dividend, Avatex did. As well, the evidence makes clear that Avatex rather than Fox Corp. made the decision to (i) engage in the June 19, 1996 Transactions, and (ii) consequently exchange unsecured debt for secured debt. Therefore, the factors of inadequate capitalization and insolvency, when applied to the instant matter, do not support a finding that Fox Corp. and Fox Drug operated as a single economic entity; rather, they arguably

support a finding that Fox Corp., Fox Drug, *and Avatex* comprised a single economic entity, which finding, of course, would support a piercing of Fox Corp.'s corporate veil as well.

(d) As for whether corporate formalities of Fox Drug were observed, the Court finds that the evidence is frankly equivocal at best on the subject. The Trustee points the Court to, and the Defendants do not dispute that there was, a certain overlap in ownership, officers, directors, and personnel between Fox Drug and Fox Corp., and that both entities used common office space, addresses, and telephone numbers. However, the evidence also shows that Fox Drug maintained corporate records, elected directors, held board meetings, and compiled minutes for such meetings. The Court understands the Trustee to essentially question the sincerity of such records, elections, and meetings, and to argue that they were merely a facade to cover the fact that Fox Drug and Fox Corp. were one and the same. Unfortunately for the Trustee, however, he bears a heavy burden to prove such facade, which burden he has not carried, particularly given his own inconsistent assertions to the effect that Fox Drug's corporate veil should not be

pierced, which assertions were made earlier within the context of a separate adversary proceeding involving the Debtors before Judge Sleet of the U.S. District Court, District of Delaware. *See* Defs.' Trial Ex. Y, 3/1/02 *Brown v. Citicorp* Hr'g Tr., at pp. 157–160; Defs.' Trial Ex. BB, 1/18/02 Trustee's Br. in *Brown v. Citicorp*, at pp. 8–10. With respect to such inconsistent assertions of the Trustee, the Court has already spent ample time setting forth its rationale as to why the same constitute evidence against the Trustee's "facade" position in the instant matter, *see* Nov. 19, 2002 Mem. Op., at 58–60, and, thus, the Court need say little more on that subject.[4] However, the Court will say that such assertions carry much evidentiary weight in the instant matter, and only in part because they are inconsistent with the "facade" position now put forth by the Trustee in the instant adversary proceeding. The Court also places substantial weight on such assertions because (a) the Court views the Trustee as objective and, after having literally spent years reviewing the records and affairs of the Debtors prior to the time when the aforesaid inconsistent assertions were made, also very knowledgeable if not expert regarding

---

**4.** The Trustee, at the trial on February 5, 2003, attempted to explain away the inconsistency of his assertions made during the proceeding before Judge Sleet by arguing that the Trustee's opposition to veil piercing in such proceeding was predicated upon the failure of his opposition therein to identify fraud or a similar injustice that would have warranted a piercing of Fox Drug's corporate veil. The Court cannot accept such explanation, however, given that many of such assertions by the Trustee were addressed not to fraud or injustice that would have warranted

veil piercing but rather dealt with whether Fox Drug observed corporate formalities. *See* Defs.' Trial Ex. Y, 3/1/02 *Brown v. Citicorp* Hr'g Tr., at p. 157 (Trustee's statement that the Debtors were different corporations that kept separate records); Defs.' Trial Ex. BB, 1/18/02 Trustee's Br. in *Brown v. Citicorp*, at p. 10 n. 8 (Trustee's assertion that "evidence does not show that Fox[] ... [Drug's] corporate form was completely ignored.... Fox[] Corp. paid practical and legal attention to the distinct corporate form of the two companies.").

such records and affairs, (b) the landscape regarding the knowledge of the Trustee respecting such records and affairs does not appear to have changed at all since such inconsistent assertions were made, and (c) the only thing that has changed since such assertions were made by the Trustee is that he now has an incentive to essentially retract such assertions.[5] Therefore, the Court finds that the Trustee has not sufficiently proven that Fox Drug's purpose in respecting those corporate formalities to which it accorded respect was only so as to create a facade that it was not, in actuality, just the alter ego of Fox Corp. As well, the Court would expect to see, and thus does not find particularly damning, the aforesaid overlap between the Debtors in the items to which the Trustee points the Court. Therefore, the Court must find that the "corporate formalities" factor also does not point in favor of a conclusion that Fox Drug and Fox Corp. operated as a single economic entity.

In light of the foregoing, the Court concludes that the Trustee has failed to establish, even preponderantly, that Fox Corp. and Fox Drug operated as a single economic entity. Therefore, and for that reason as well, the Court is constrained to and, thus, does deny the Trustee's request that Fox Drug's corporate veil be pierced.

## V.

**IN SUMMARY,** the Trustee's request to combine Fox Drug and Fox Corp. via a piercing of the corporate veil is **DENIED,** which means that the separate corporate forms of Fox Drug and Fox Corp. must be respected for all purposes in the instant adversary proceeding.

---

**5.** Apparently so great is the Trustee's incentive in the instant matter to argue contrary to that which he argued before Judge Sleet that the Trustee, in the instant matter, even argues for a different statement of the law from that which he posited before Judge Sleet as to what *must* be shown in order to pierce a corporate veil. In particular, the Trustee conspicuously asserts in the instant matter that "[s]ignificantly, under Delaware alter ego theory, 'there is no requirement of a showing of fraud.' " Trustee's Pretrial Memo., at p. 6. Such statement of the law runs directly counter, however, to the Trustee's position before Judge Sleet that, before one can veil pierce under Delaware law, "[t]he corporation [whose veil is to be pierced] must be a sham *and exist for no other purpose than as a vehicle for fraud."* Defs.' Trial Ex. BB, 1/18/02 Trustee's Br. in *Brown v. Citicorp,* at p. 9 (citing to *Wallace,* 752 A.2d at 1184, as have the Defendants in opposition to the Trustee in the instant matter). Of course, the law regarding veil piercing has not changed since the Trustee appeared before Judge Sleet; however, the Trustee's incentive to pierce the corporate veil of Fox Drug—nonexistent when he appeared before Judge Sleet—changed dramatically with the commencement of the instant adversary proceeding.