*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KAISER-FRANCIS OIL COMPANY and AURORA-KF, LLC, | ) ) ) | Supreme Court No. S-18546 |
| Appellants, | ) ) | Superior Court No. 3AN-17-07911 CI |
| v. | ) ) | O P I N I O N |
| DEUTSCHE OEL & GAS, S.A., RIECK OIL, INC., and KAY RIECK, | ) ) ) ) | No. 7758 – March 28, 2025 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Peter A. Sandberg, Ingaldson Fitzgerald, P.C., Anchorage, and Frederic Dorwart and Jared M. Burden, Frederic Dorwart, Lawyers PLLC, Tulsa, Oklahoma, for Appellants. Robin O. Brena, Jake W. Staser, Laura S. Gould, and Kelly Moghadam, Brena, Bell & Walker, P.C., Anchorage, for Appellee Kay Rieck. No appearance by Appellees Deutsche Oel & Gas, S.A. and Rieck Oil, Inc.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

BORGHESAN, Justice.

# I. INTRODUCTION

This appeal raises a choice-of-law question: When an Alaska court is asked to pierce the corporate veil of a Delaware corporation, should the court apply Delaware law or Alaska law to determine whether the veil should be pierced?

The superior court chose Delaware law. It reasoned that the majority of jurisdictions apply the law of the state of incorporation. The rationale in these cases is that veil-piercing concerns the internal affairs of the corporation, and under the "internal affairs doctrine" a corporation's internal affairs are always governed by the law of the state of incorporation. The superior court ruled that, under Delaware law, the corporate veil should not be pierced.

We hold that Alaska law applies. Veil-piercing is not a matter of internal corporate affairs because the rights of third parties are at issue. And the main rationale for the internal affairs doctrine — to avoid incompatible demands on the corporation, its officers, and shareholders — does not have much force in this context. Therefore, the choice of which state's law to apply to veil-piercing claims is not determined by the internal affairs doctrine, but by traditional choice-of-law principles, which entail balancing the relevant interests of the respective states. In this matter, Alaska has a more significant interest than Delaware. We therefore vacate the superior court's choice-of-law ruling and remand for further proceedings.

# II. FACTS AND PROCEEDINGS

## A. Facts

Kaiser-Francis Oil Company (KFOC) is a Delaware corporation principally owned by George B. Kaiser. KFOC is the parent company of Aurora-KF, an Oklahoma limited liability company (LLC). Aurora-KF held Aurora Gas, LLC, an Alaska company that had obtained an oil and gas lease on lands owned by Cook Inlet Regional, Inc. (CIRI) in Alaska.

In 2002 Kaiser gave CIRI an unconditional guarantee (the GBK Guarantee), individually and in his capacity as KFOC's president, of "the full and prompt payment and the timely performance of all obligations when due of Aurora Gas." Kaiser and KFOC were prohibited from assigning this liability to a third party without CIRI's prior written consent.

Aurora-KF began negotiations to sell Aurora Gas to Rieck Oil in 2015. Rieck Oil is a Delaware corporation that was formed by Kay Rieck for the sole purpose of buying Aurora Gas. Kay Rieck is also the majority owner of Deutsche Oel and Gas, S.A. (DOGSA), a société anonyme[1] established under the laws of Luxemburg with a principal place of business in Germany.

Aurora-KF and Rieck Oil reached an agreement for the sale of Aurora Gas. The terms were reduced to an interest purchase agreement in which Rieck Oil agreed to "undertake, prior to Closing, the complete removal or replacement of the GBK Guarantee." Alternatively, the parties could close on the deal without removal of the GBK Guarantee if Rieck Oil provided a guarantee "in the maximum amount of $5,000,000 . . . which shall unconditionally guarantee the full and prompt payment and timely performance of all obligations for any claims brought by CIRI against [Kaiser] or KFOC."

Aware that Rieck Oil was undercapitalized, CIRI declined to remove or replace the GBK Guarantee. Aurora-KF and Rieck Oil elected to close on the sale of Aurora Gas pursuant to the interest purchase agreement. The agreement's indemnification provision referenced the liabilities established by the GBK Guarantee. KFOC sought a personal guarantee from Kay Rieck, but he refused because he felt overleveraged and was unwilling to take on more personal debt at the time. Instead, Rieck's other company, DOGSA, issued a $5 million indemnity guarantee (the DOGSA

---

[1] *Société anonyme*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("*French law*. An incorporated joint-stock company.").

Guarantee). Upon completion of the sale, Rieck Oil owned Aurora Gas, but Kaiser and KFOC remained liable to CIRI for any unmet Aurora Gas obligations, and DOGSA and Rieck Oil were bound to indemnify Kaiser and KFOC for any such obligations.

Although Rieck Oil made efforts to have the GBK Guarantee removed, it remained in place when Aurora Gas was forced into involuntary bankruptcy. When the bankruptcy occurred, CIRI required all wells to be plugged and abandoned — calling on Kaiser and KFOC to perform when the defunct Aurora Gas could not. Kaiser and KFOC demanded DOGSA fulfill its $5 million guarantee, but DOGSA did not. Kaiser and KFOC also sought reimbursement from Rieck Oil pursuant to the indemnification provision, which Rieck Oil did not provide.

### B. Proceedings

Kaiser and KFOC filed suit against Rieck Oil, DOGSA, and Kay Rieck alleging breach of contract and seeking to pierce the corporate veil of Rieck Oil to hold Kay Rieck personally liable for the remediation costs. After discovery each party moved for partial summary judgment on the veil-piercing issue.

As a threshold matter, the superior court considered whether Alaska or Delaware's veil-piercing law applied. While the court considered Alaska to be the state with the most significant relationship to the litigation, Delaware was the state where Rieck Oil was incorporated. The court summarized two approaches other jurisdictions have taken to this choice-of-law issue: the internal affairs doctrine and a contacts-based test.[2]

The court concluded that Alaska has a more significant relationship to the litigation because the case ultimately concerned remediation of wells held by an Alaska LLC on Alaska land owned by an Alaska Native Corporation. It found Delaware's sole

---

[2]     *See Pister v. State, Dep't of Revenue*, 354 P.3d 357, 363-64 (Alaska 2015) (explaining that choice-of-law issue has not been settled in Alaska and declining to address it because veil-piercing was appropriate under both Alaska and Washington law).

interest was in "preserving its status as a favored state of incorporation." However, the court concluded that "in the absence of definitive contrary guidance" from our court, the law of the state of incorporation governs. The court explained that "the vast majority of jurisdictions" apply the law of the state of incorporation. It also read Section 307 of the Restatement (Second) of Conflicts of Laws to adopt the rule that the law of the state of incorporation controls shareholder liability for corporate debts.

The superior court applied Delaware law to determine whether veil-piercing was appropriate. KFOC sought to pierce Rieck Oil's corporate veil under either of two tests under Delaware law: (1) the misconduct test or (2) the alter ego test.[3] The court first concluded that "piercing the corporate veil under Delaware's misconduct test requires proof of common law or equitable fraud, neither of which are alleged vis-à-vis Rieck Oil." The court then concluded that Alaska and Delaware have "similar" alter ego tests. The court explained that both tests weigh similar factors[4] to determine whether a "company simply functioned as a façade for the controlling shareholder."[5] However, the court determined that the key difference is that Delaware requires, in addition, proof of fraud, injustice, or unfairness.

After determining that the parties "essentially do not dispute that the alter-ego factors weigh in favor of finding that Rieck Oil is Rieck's alter ego," the court focused on whether KFOC could prove the element of injustice or unfairness required to justify piercing the corporate veil under Delaware law. The court made the following findings:

---

[3]     *See Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992) ("[A] court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner.").

[4]     *See EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. 3184, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008) (Delaware alter ego factors); *Uchitel Co. v. Tel. Co.*, 646 P.2d 229, 235 (Alaska 1982) (Alaska alter ego factors).

[5]     *Winner Acceptance Corp. v. Return on Cap. Corp.*, No. 3088, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008); *see also Uchitel Co.*, 646 P.2d at 235.

(1) Rieck Oil was undercapitalized; (2) Rieck Oil has been administratively dissolved; (3) Rieck Oil never observed corporate formalities; (4) to the extent that funds flowed through Rieck Oil, they appear to have been under the control of Rieck; and (5) in general, [witness] testimony supports a finding that Rieck Oil is materially indistinguishable from Rieck.

However, the court concluded that there was a genuine factual dispute about whether the element of fraud, injustice, or unfairness required by Delaware law existed. Therefore, the court denied summary judgment.

KFOC deposed Kay Rieck and then renewed its motion for summary judgment. The superior court again denied the motion, reasoning that the evidence could still support a finding that KFOC "knew Rieck Oil was undercapitalized . . . but proceeded with a risky business deal anyway, and that there was not anything unjust or unfair about the transaction." The court subsequently held a bench trial on the element of unfairness or injustice under Delaware law.

After trial the court found no misrepresentations by Kay Rieck or other conduct that would qualify as fraud or injustice under Delaware law. The court found that KFOC was aware of Rieck Oil's undercapitalization and "understood the nature of the risks [it was] undertaking at closing and accepted those risks in order to complete the transaction and avoid losing Rieck Oil as a buyer." The court concluded that KFOC "should not be permitted to hold Mr. Rieck personally liable for breach of contract where, as here, [it] expressly requested that he provide a personal guarantee and w[as] unable to obtain that contractual protection." Therefore, the court declined to pierce Rieck Oil's corporate veil.

KFOC appeals.

## III. STANDARD OF REVIEW

"The appropriate choice of law is a legal question to which we apply our independent judgment."[6] "Whether the superior court applied the correct legal standard is a question of law that we review de novo."[7] "In doing so 'we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[8]

## IV. DISCUSSION

An action to pierce the corporate veil is "brought by parties injured by the corporation to hold liable those corporate officers, directors and/or stockholders whose [conduct] caused the injury to the plaintiffs."[9] Piercing the corporate veil "is an equitable doctrine, premised on the court's ability to look past the 'legal fiction' to do equity."[10] Courts do so only in "exceptional circumstances."[11]

When a party seeks to pierce the veil of a foreign corporation, the court must choose which state's law to apply: the forum state's law, the law of the state of incorporation, or some other state's law. Until now, we have not had to decide how to make this choice. In *Pister v. State, Department of Revenue*, we recognized that "[c]ourts across the country have reached different conclusions about the proper law to apply when veil-piercing claims are brought against foreign corporations."[12] But we

---

[6] *Pister*, 354 P.3d at 362 (quoting *Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 52 (Alaska 2001)).

[7] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

[8] *Ito v. Copper River Native Ass'n*, 547 P.3d 1003, 1009 (Alaska 2024) (quoting *Douglas Indian Ass'n v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 403 P.3d 1172, 1175 (Alaska 2017)).

[9] *Brown v. Knowles*, 307 P.3d 915, 925 (Alaska 2013) (quoting *In re Transcolor*, 296 B.R. 343, 362 (Bankr. D. Md. 2003)) (alteration omitted).

[10] *Pister*, 354 P.3d at 363 (quoting *Brown*, 307 P.3d at 928).

[11] *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1125 (Alaska 2009).

[12] 354 P.3d at 364.

did not have to decide the proper approach in that case because the choice of law made no difference to the outcome.[13]

In this case the question is squarely presented. We first explain why the choice between Alaska law and Delaware law is outcome-determinative. We then explain the rule that Alaska courts must apply to decide which state's law governs veil-piercing claims against a foreign corporation. And finally, we explain why, under this approach, Alaska law applies to the claim at issue in this case.

### A. Alaska Law And Delaware Law Are Different, And The Differences Are Outcome-Determinative.

We first consider whether the choice-of-law question makes a difference in the outcome of this case.[14] The superior court ruled that Delaware law requires a showing of injustice before the corporate veil may be pierced, while Alaska law does not. We agree: Alaska law does not require a showing of injustice or unfairness to pierce the corporate veil when the corporation is merely the "alter ego" of the shareholder. We also conclude that the superior court did not err in determining that KFOC failed to make the requisite showing of unfairness or injustice under Delaware law. Consequently, the outcome of this case depends on whether Alaska or Delaware law applies.

#### 1. Alaska law does not require an additional element of injustice to pierce the corporate veil under the alter ego test.

Rieck contends that Alaska and Delaware law both require a showing of some "inequity, misconduct, or injustice" before the corporate veil may be pierced. He

---

[13] *Id.*

[14] *See id.* (declining to decide choice-of-law "[b]ecause we hold that the superior court's findings justify piercing Northwest Medical's corporate veil under both Alaska and Washington law"); *see also, e.g.*, 15A C.J.S. *Conflict of Laws* § 31 (2024) ("The court need not engage in any choice-of-law analysis when no conflict is established between the states' laws that potentially apply.").

asserts that because piercing the corporate veil is an equitable remedy, a court should pierce the veil only if it is equitable to do so.

But Alaska law does not always require a showing of injustice to pierce the corporate veil. Our case law recognizes two distinct tests for piercing the corporate veil: a "misconduct" test and a "mere instrumentality"/"alter ego" test.[15] Under the misconduct test, the corporate veil "may be pierced 'if the corporate form is used to defeat public convenience, justify wrong, commit fraud, or defend crime.' "[16] Under the mere instrumentality or alter ego test, we have "*also* recognized that the corporate veil may be pierced when a corporation is nothing more than a 'mere instrument' of a shareholder."[17]

The existence of two separate tests to pierce the corporate veil has been clear since our decision in *Uchitel Co. v. Telephone Co.*[18] There we first considered the misconduct test and concluded that the plaintiff "failed to present any evidence from which it could be concluded that [the corporate owner] deceived [it] or that he employed the corporate entities to defeat public policy or for some fraudulent or criminal purpose."[19] We then looked to an "*alternative theory* of liability [that] was developed in cases dealing with parent-subsidiary relationships."[20] Under this theory, "[t]he

---

[15]     *L.D.G., Inc.*, 211 P.3d at 1125. We use the terms "alter ego" and "mere instrumentality" interchangeably to refer to the same test. *See* 18 C.J.S. *Corporations* § 23 at n.5 (2024).

[16]     *L.D.G., Inc.*, 211 P.3d at 1125 (quoting *Elliot v. Brown*, 569 P.2d 1323, 1326 (Alaska 1977); *accord Uchitel Co. v. Tel. Co.*, 646 P.2d 229, 234 (Alaska 1982)); *see also Pister*, 354 P.3d at 364-65 (tax evasion is sufficient to pierce veil under misconduct standard).

[17]     *L.D.G., Inc.*, 211 P.3d at 1125 (emphasis added) (citing *Uchitel Co.*, 646 P.2d at 235).

[18]     646 P.2d at 234.

[19]     *Id.*

[20]     *Id.* (emphasis added).

parent corporation may also be liable for the wrongful conduct of its subsidiary when the subsidiary is the mere instrumentality of the parent."[21]  In deciding whether a corporation is a mere instrumentality of a shareholder, we consider six relevant factors[22]:

> (a) whether the shareholder sought to be charged owns all or most of the stock of the corporation; (b) whether the shareholder has subscribed to all of the capital stock of the corporation or otherwise caused its incorporation; (c) whether the corporation has grossly inadequate capital; (d) whether the shareholder uses the property of the corporation as his own; (e) whether the directors or executives of the corporation act independently in the interest of the corporation or simply take their orders from the shareholder in the latter's interest; (f) whether the formal legal requirements of the corporation are observed.[23]

Rieck suggests that even under Alaska's mere instrumentality test, some form of wrongful conduct must be present.  He cites a footnote in *Uchitel*, where we quoted a North Carolina decision:

> [W]hen . . . the corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder, is an individual or another corporation.[24]

---

**21**    *Id.* (quoting *Jackson v. Gen. Elec. Co.*, 514 P.2d 1170, 1173 (Alaska 1973)).

**22**    *Id.* at 234-35.

**23**    *Id.* at 235 (adapting parent-subsidiary factors from *Jackson* to shareholder-corporation context).

**24**    *Id.* at 235 n.14 (alterations in original) (quoting *Henderson v. Sec. Mortg. & Fin. Co.*, 160 S.E.2d 39, 44 (N.C. 1968)).

Rieck understands the reference to violation of public policy to mean that a court can pierce the corporate veil only when declining to do so would cause inequity. But that is not the proposition the quote stands for. Rather, we quoted that case to explain why the "determination of the liability of an individual shareholder is analytically similar" to determining a parent-corporation's liability for a subsidiary.[25] Our reliance on the North Carolina decision had nothing to do with whether some kind of inequity must be shown in addition to proving the corporation is the alter ego of the shareholder.[26] In fact, *Uchitel* is quite clear that when the corporation is the mere instrumentality of the shareholder, "[l]iability is imposed . . . simply because the two corporations are so closely intertwined that they do not merit treatment as separate entities."[27]

In sum, a plaintiff need not make an additional showing of injustice or unfairness to pierce the corporate veil under Alaska's mere instrumentality test. Therefore, if Alaska law governs the veil-piercing dispute in this case, KFOC need only prove that the *Uchitel* factors have been satisfied.

**2. The injustice element required by Delaware law is not met, and because Alaska law would produce a different outcome, we must decide whether the choice of Delaware law was correct.**

Like Alaska law, Delaware law recognizes the misconduct and mere instrumentality tests.[28] But the distinction between the two tests is somewhat blurred.

---

[25] *Id.*

[26] *See id.* at 234-35, 235 n.14.

[27] *Id.* at 234 (quoting *Jackson v. Gen. Elec. Co.*, 514 P.2d 1170, 1173 (Alaska 1973)).

[28] *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) ("Delaware law permits a court to pierce the corporate veil of a company 'where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner.' " (alteration in original) (quoting *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992))).

While the exact level of misconduct required to pierce the corporate veil is unclear,[29] Delaware case law suggests that there must be at least some form of misconduct to pierce the corporate veil, even under an alter ego theory.[30]

KFOC argues that the superior court misconstrued Delaware law to require "intentional wrongdoing" to satisfy the injustice element, as opposed to only "something similar to a sham." KFOC does not challenge the court's factual findings. However, it contends that had the court applied the correct legal standard to the facts, the evidence would have been sufficient to pierce Rieck Oil's veil.

We disagree with KFOC's contention that there is a "massive difference between a standard that requires intentional wrongdoing and one that requires something similar to a sham." In *Blair v. Infineon Technologies AG*, the United States District Court for the District of Delaware explained that under Delaware law, "the requisite injustice or unfairness is not that the parent corporation committed an actual fraud or sham but just 'something that is similar in nature to fraud or a sham.' "[31] While *Blair* did apply federal veil-piercing law, the court explained that under Delaware law, "fraud or something like it is required."[32]

---

[29] *See, e.g.*, *Multi-Media Holdings, Inc. v. Piedmont Ctr., 15 LLC*, 583 S.E.2d 262, 264 (Ga. App. 2003) (concluding it is unclear whether Delaware law requires showing of fraud); *David v. Mast*, No. 1369-K, 1999 WL 135244, at *2 (Del. Ch. Mar. 2, 1999) ("The legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over nor under-inclusive." (quoting *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 989 (Del. Ch. 1987))).

[30] *See In re Foxmeyer Corp.*, 290 B.R. 229, 236 (Bankr. D. Del. 2003).

[31] 720 F. Supp. 2d 462, 471 (D. Del. 2010) (quoting *In re Foxmeyer*, 290 B.R. at 236).

[32] *Id.* (quoting *In re Foxmeyer*, 290 B.R. at 236); *see also Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989) (declining to conduct protracted choice-of-law analysis for alter ego because federal, Delaware, and Oklahoma common law all produced same outcome: "Fraud or something like it is

In its order, the superior court recognized that the injustice element under Delaware law has been described in several ways:

- "requires that the corporate structure cause fraud or similar injustice";[33]

- "a showing of fraud or something like fraud";[34]

- "[e]ffectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud";[35]

- "[u]nless done deliberately, with specific intent to escape liability for a specific tort or class of torts, the cause of justice does not require disregarding the corporate entity."[36]

The court ultimately used the following interpretation: whether "Mr. Rieck abused the corporate form for the purpose[] of committing fraud or similar injustice against [KFOC]." Applying our independent judgment, we agree with the superior court's summary of Delaware law.

We also agree with the superior court's conclusion that the evidence does not establish this kind of misconduct. The undisputed facts here are not comparable to

---

required."); *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968) (Delaware law).

[33] *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (quoting *Outokumpu Eng'g Enter., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. 1996)).

[34] *Mobil Oil Corp.*, 718 F. Supp. at 268.

[35] *Wallace ex rel. Cencom Cable Income Partners II, Inc.*, 752 A.2d at 1184.

[36] *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (quoting *Mobil Oil Corp.*, 718 F. Supp. at 269).

The superior court also described the standard "fraud or injustice akin to intentional wrongdoing," but this standard pertains to Illinois law, not Delaware law. *Blair*, 720 F. Supp. 2d at 470 (citing *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 463 (7th Cir. 1991)).

those in the cases KFOC cites.[37]  The Delaware Court of Chancery has held that "[a]cts intended to leave a debtor judgment proof are sufficient to show fraud and injustice."[38] In that case, the court held that the plaintiffs had pleaded enough facts to pierce the corporate veil when alleging that a corporation was formed specifically to divert funds from a debtor corporation.[39]  The court explained that the case for veil-piercing "[did] not rest on insolvency alone," noting that the plaintiff alleged there was a "deliberate decision to undercapitalize the entity."[40]  In another case, a plaintiff adequately pleaded a veil piercing claim when it alleged the defendant siphoned funds and "strategically sold [the company's] parent entity in order to prevent Plaintiff from recovering any award issued by the arbitrators."[41]  No such conduct was found here.  Rather, the superior court found that Rieck Oil was formed for legitimate purposes, that Rieck did not intend to avoid satisfaction of the remediation obligations, and that Rieck did not cause any assets to be removed from the companies to avoid satisfying remediation or judgment.  These facts, showing only undercapitalization or insolvency, are not enough to establish injustice under Delaware law.[42]

---

[37]     *See Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 707-08 (Del. Ch. 2021) (concluding injustice or unfairness could exist where holding company was insolvent and was aware of its "potential liability long ago and yet made a deliberate decision to undercapitalize the entity"); *Gadsden v. Home Pres., Co.*, No. Civ. A. 18888, 2004 WL 485468, at *5 (Del. Ch. Feb. 20, 2004) (finding fraud where defendant intentionally removed funds from corporate accounts).

[38]     *Manichaean Cap.*, 251 A.3d at 708-09 (quoting *Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*, No. 18-654-RGA, 2019 WL 148454, at *5 (D. Del. Jan. 9, 2019)).

[39]     *Id.* at 709-10.

[40]     *Id.* at 707-08, 707 n.62.

[41]     *Compagnie des Grands Hotels d'Afrique S.A.*, 2019 WL 148454, at *5.

[42]     *Manichaean Cap., LLC*, 251 A.3d at 707-08; *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529-30 (D. Del. 2008) (explaining that shortage of capital is

-14-                                                          **7758**

We also reject KFOC's contention that making promises that could never be honored is sufficient misconduct. The case KFOC cites — *David v. Mast*[43] — is factually distinct from the case at hand. In *Mast* the court pierced the corporate veil when a corporation's sole shareholder advertised goods and services with a ten-year warranty by a national franchiser that the shareholder knew had no funds to honor such a warranty.[44] Critically, that shareholder "misrepresent[ed] the corporate entity's capacity to perform contrary to law and [misled] a consumer protected by [statute]."[45] It is uncontested here that Rieck did not make any misrepresentations and that KFOC "understood the nature of the risks they were undertaking."

In sum, we see no error in the superior court's conclusion that there was not enough evidence to show the injustice element required to pierce the corporate veil of Rieck Oil under Delaware law. Because Alaska law does not impose a similar requirement under the alter ego test and would produce a different outcome, we must decide whether the choice of Delaware law was correct.

**B.     The Veil-Piercing Claim Does Not Implicate The Internal Affairs Of The Corporation, So The Court Must Balance The Relevant Interests To Determine Which State's Law To Apply.**

In *Pister* we recognized that "[c]ourts across the country have reached different conclusions about the proper law to apply when veil-piercing claims are brought against foreign corporations."[46] We outlined the two competing approaches: to apply the law of the state of incorporation in every case, or to apply "more general

---

relevant to "whether the corporation was established to defraud its creditors" but "is not per se a reason to pierce the corporate veil").

[43]     No. 1369-K, 1999 WL 135244, at *1-3 (Del. Ch. Mar. 2, 1999).

[44]     *Id.* at *1.

[45]     *Id.*

[46]     *Pister v. State, Dep't of Revenue*, 354 P.3d 357, 364 (Alaska 2015).

choice-of-law principles, such as an evaluation of the states' respective interests."[47]  It was not necessary in *Pister* to decide which approach to adopt because the choice of law there made no difference to the outcome.[48]

In this case, the superior court applied the law of the state of incorporation, observing that courts in the vast majority of jurisdictions take this approach.  The majority approach, as we explain below, treats veil-piercing as a matter of a corporation's internal affairs, which are governed by the law of the state of incorporation.  The superior court also cited Section 307 of the Restatement (Second) of Conflict of Laws, which states that the law of the state of incorporation controls shareholder liability for corporate debts.

We see the matter differently.  While we look to the Restatement for guidance when resolving choice-of-law issues,[49] we do not read the Restatement to mean that veil-piercing claims involve matters of internal corporate affairs that must be governed by the law of the state of incorporation.  As other courts have recognized, "alter ego liability and the related doctrine of piercing the corporate veil" generally "do[] not involve consideration of corporate internal affairs," but rather "the abuse of the corporate form to the detriment of third parties."[50]  Because veil-piercing generally

---

[47]     *Id.*

[48]     *Id.* at 364-66.

[49]     *Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 53 (Alaska 2001); *Palmer G. Lewis Co. v. ARCO Chem. Co.*, 904 P.2d 1221, 1227 (Alaska 1995) ("When choice of law issues arise, we commonly refer to the Restatement (Second) of Conflicts for guidance."); *see also Ehredt v. DeHavilland Aircraft Co. of Canada*, 705 P.2d 446, 453 (Alaska 1985) (applying Restatement to determine which law governs measure of damages in wrongful death suit when representative of deceased resided out of state).

[50]     *UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, No. 650097/2009, 924 N.Y.S.2d 312, 2011 N.Y. Slip Op. 50297(U) at *3 (Sup. Ct. N.Y. Mar. 1, 2011), *aff'd in relevant part*, 940 N.Y.S.2d 74, 74 (N.Y. App. Div. 2012) ("The motion court correctly ruled that New York law governs plaintiff's veil-piercing claim . . . .").

is not an internal affair, we conclude that a court must apply an interests-based analysis to determine which state's law governs a claim to pierce the corporate veil.

The Restatement generally provides that, absent a governing statute, the choice of law must be determined by a balance of interests.[51] This balance involves considering, among other things, the interests of the forum state, the relevant interests of other states, protecting justified expectations, and ensuring "certainty, predictability and uniformity of result."[52]

The Restatement also provides specific guidance for resolving choice-of-law questions involving business corporations. Under Section 301 rights and liabilities flowing from corporate acts of the kind that can be taken by individuals, such as torts and contracts, "are determined by the same choice-of-law principles as are applicable to non-corporate parties."[53] That is, the choice of law in these cases will be determined by the same balance of interests described above.

The rule is different for rights and liabilities arising from issues "peculiar to corporations."[54] In those instances, Section 302 provides that the law of the state with the "most significant relationship to the occurrence" under the factors described above will usually be the law of the state of incorporation "except in the unusual case where . . . some other state has a more significant relationship."[55] In effect, Section 302

---

[51]    *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (AM. L. INST. 1971).

[52]    *Id.*

[53]    *Id.* § 301.

[54]    *Id.* § 302 & cmt. a.

[55]    *Id.* § 302.

presumes the "law of the state of incorporation will be applied" to disputes peculiar to corporations unless some other jurisdiction has a more significant relationship.[56]

Piercing the corporate veil is, undoubtedly, a matter "peculiar to corporations." So Section 302 applies. But it does not follow that veil-piercing is a matter of "internal affairs" of the corporation. On this question, consulting the commentary to Section 302 is helpful. In describing the kinds of matters that are "peculiar to corporations," the comment distinguishes between the " 'internal affairs' of a corporation — that is the relations inter se of the corporation, its shareholders, directors, officers or agents" — and other matters that "affect the interests of the corporation's creditors."[57] In the category of internal affairs fall

> steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares.[58]

This list reflects the underlying principle of the internal affairs doctrine, "which recognizes that only one State should have the authority to regulate a corporation's internal affairs . . . otherwise a corporation could be faced with conflicting demands."[59] It would be impractical to have matters that "involve a corporation's

---

[56]   *Id.* § 302(2); *see id.* § 302 cmt. b ("These factors, for reasons stated in Comments e-h, will usually lead to the application of the local law of the state of incorporation, which in the situation dealt with here is a contact of great significance.").

[57]   *Id.* § 302 cmt. a.

[58]   *Id.*

[59]   *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

organic structure or internal administration" governed by different laws.[60] The Restatement points to the chaos that would ensue if "an election of directors, an issuance of shares, a payment of dividends, a charter amendment, or a consolidation or reorganization were to be held valid in one state and invalid in another."[61]

But only some matters fall within the category of affairs or issues that cannot reasonably be subject to the laws of different states. Section 302's comment recognizes that "there is no reason why corporate acts" like "the making of contracts, the commission of torts and the transfer of property" must always be governed by the law of the state of incorporation.[62] It also clarifies that "certain issues which are peculiar to corporations . . . do not affect matters of organic structure or internal administration and need not, as a practical matter, be governed by a single law," even if the law of the state of incorporation usually ends up being applied.[63] Accordingly, the key question is whether piercing the corporate veil is a matter "peculiar to corporations" but not an internal affair that must be governed by a single state's law.

The superior court relied on Section 307 of the Restatement to describe veil-piercing as an internal affair, following courts in some jurisdictions. But Section 307 does not expressly mention veil-piercing and provides only: "The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts."

---

[60] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302 cmt. e. (AM. L. INST. 1971).

[61] *Id.*

[62] *Id.*

[63] *Id.*; *accord id.* § 309 cmt. c ("It would be practicable, for example, for a director to be held liable for a given act in one state and to be held not liable for an identical act in another state.").

There is reason to think Section 307 was not intended to designate veil-piercing as an "internal affair" always governed by the law of the state of incorporation. Although the Restatement explains that matters of internal corporate affairs "fall within the scope of" Sections 303-310,[64] the topics described are not exclusively matters of internal corporate affairs.[65] For example, Section 303 provides that the "local law of the state of incorporation will be applied to determine who are shareholders of a corporation except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship."[66] The comment indicates that as a general matter, the rationale for the internal affairs doctrine squarely applies: "uniform treatment of the shareholders of a corporation is an important objective which can only be attained by having their rights and liabilities with respect to the corporation governed by a single law."[67] But when the rights of third parties may be involved, such as questions of inheritance and divorce, the law of a different state may apply.[68] This qualification indicates that matters described in Sections 303-310 are not always matters of the corporation's internal affairs that must be governed by the law of the state of incorporation.

Further, while the text of Section 307 is broad enough to encompass claims to pierce the corporate veil, the commentary to the rule does not mention veil-piercing and has a narrower focus.[69] The first comment discusses "the liability to which

---

[64] *See id.* § 302 cmt. a (explaining that matters that "involve the 'internal affairs' of a corporation . . . fall within the scope of the rules of §§ 303-310").

[65] Sections 303-310 describe choice-of-law rules for matters involving corporate officers, directors, and shareholders. *Id.* §§ 303-310.

[66] *Id.* § 303.

[67] *Id.* § 303 cmt. d.

[68] *Id.* § 303 cmt. e.

[69] *See id.* § 307.

a person subjects himself by purchasing, or subscribing to, shares of a corporation."[70] An obvious example of such liability is any remaining balance for stock subscriptions, but the comment also explains that some jurisdictions hold shareholders liable for normal business debts in particular industries, such as banking and insurance, or when capital stock has yet to be paid in.[71] The comment then discusses how the law of the state of incorporation may impose liability for corporate debts on some classes of shareholders and not others.[72] Veil-piercing is unmentioned.

To the extent Section 307 alludes to veil-piercing, it suggests that an interests-balancing analysis applies. Although the text of Section 307 does not contain an exception for when another state has a more significant interest, the reporter's note does. It provides:

> A state may impose liability upon a shareholder of a foreign corporation for an act done by the corporation in the state, if the state's relationship to the shareholder is sufficient to make reasonable the imposition of such liability upon him.[73]

Even if Section 307 was meant to address veil-piercing, it does not clearly treat veil-piercing as an internal affair that must always be governed by the law of the state of incorporation.

Given this lack of clarity, courts have reached different conclusions on whether veil-piercing is governed by the internal affairs doctrine.[74] Many courts have

---

[70] *Id.* § 307 cmt. a.

[71] *Id.*

[72] *Id.*

[73] *Id.* at § 307 *rep's note* (citing *Thomas v. Matthiessen*, 232 U.S. 221 (1914); *Pinney v. Nelson*, 183 U.S. 144 (1901)).

[74] *Compare Matson Logistics, LLC v. Smiens*, No. 12-400, 2012 WL 2005607, at *6 (D. Minn. June 5, 2012) (noting "the near unanimity of courts in applying the internal affairs doctrine to veil piercing claims"), *and Container Life Cycle*

held, as Rieck argues, that veil-piercing is an inherently internal affair.  For instance, the Northern District of Iowa has explained:  "the internal affairs doctrine still specifically applies to piercing the corporate veil and/or alter ego theories because whether or not the independence of an out-of-state entity will be respected is collateral to and not part of the parties' negotiations or expectations with respect to the contract."[75]  The court added that the internal affairs doctrine "has the added benefit of recognizing that the state of organization generally 'has the greater interest in determining when and if' limited liability may 'be stripped away' from an entity organized pursuant to its laws."[76]

But a bright line rule always applying the law of the state of incorporation does not necessarily result in application of the law of the state with the greater interest in the dispute.  We are more persuaded by the reasoning of the decisions concluding that veil-piercing is not subject to the internal affairs doctrine.  For example, the South Carolina Supreme Court has reasoned that although "[v]eil piercing cases implicate corporate law[, they] involve disputes that reach beyond the confines of the

---

*Mgmt. LLC v. Safety Mgmt. Servs. Co.*, No. 6:20-CV-06001, 2020 WL 2843224, at *4 (W.D. Ark. June 1, 2020) ("[T]he Court notes the majority of jurisdictions addressing the question of choice of law in the context of veil piercing apply the law of the state of incorporation."), *with Pertuis v. Front Roe Rests., Inc.*, 817 S.E. 2d 273, 278 (S.C. 2018) (applying forum state's law because "although '[v]eil piercing cases implicate corporate law[, they] involve disputes that reach beyond the confines of the corporation' " (quoting 1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 43.72 (2015))), *and Oncology Therapeutics Network Connection v. Va. Hematology Oncology PLLC*, No. C 05-3033, 2006 WL 334532, at *17 (N.D. Cal. Feb. 10, 2006) ("[I]t is not clear to us that an 'alter ego' claim such as that asserted by plaintiff involves 'internal' affairs of the corporation, as opposed to affairs 'external' to the corporation.").

**75**     *Tyson Fresh Meats, Inc. v. Lauer Ltd., L.L.C.*, 918 F. Supp. 2d 835, 850 (N.D. Iowa 2013) (quoting *Matson Logistics, LLC*, 2012 WL 2005607, at *6).

**76**     *Id.* (quoting *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 349 (M.D.N.C. 1995)).

corporation."[77] The court held that a claim involving "amalgamation" of two foreign corporations "is not as much a question of [their] inner-workings" as an "assessment of whether these entities actually operate as a single business enterprise, and thus should be treated as a single entity."[78] Accordingly the court did not apply the internal affairs doctrine to determine choice of law.[79]

Similarly, a federal district court in Michigan rejected the internal affairs doctrine when deciding which state's law should be applied to pierce the corporate veil on claims of environmental liability.[80] Citing the Restatement, the court acknowledged that piercing the corporate veil may be a "theor[y] of liability peculiar to corporations, in which case § 302 applies."[81] But the court reasoned: "Even if that is so, the terms of § 302 do not mandate the law of the state of incorporation . . . where the matter is not one of internal corporate governance but rather external liability."[82] The court thus looked to the law of the state having the most significant relationship to the lawsuit rather than the law of the state of incorporation.[83]

These decisions may be a numerical minority, but they are not "outliers," as the superior court suggested.[84] Indeed, they are consistent with the way the United

---

[77]    *Pertuis*, 817 S.E.2d at 278 (quoting 1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 43.72 (2015)).

[78]    *Id.*

[79]    *Id.*

[80]    *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997).

[81]    *Id.*

[82]    *Id.*

[83]    *Id.*

[84]    Other decisions with similar reasoning are:  *TAC-Critical Sys., Inc., v. Integrated Facility Sys., Inc.*, 808 F. Supp. 2d 60, 63-65 (D.D.C. 2011) (describing application of internal affairs doctrine to veil-piercing claims as misreading Section 307); *United States v. Clinical Leasing Servs., Inc.*, 982 F.2d 900, 902 n.5 (5th Cir.

States Supreme Court has framed the internal affairs doctrine. In *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, the Supreme Court considered a case in which a state-owned Cuban bank brought suit against an American bank to recover an unpaid letter of credit.[85] The American bank counterclaimed, asserting a right to set off the value of the assets the Cuban government seized and nationalized.[86] In addressing which conflict of laws principles apply in determining whether a government instrumentality may be held liable for actions taken by the sovereign, the Court stated:

> As a general matter, the law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation . . . . Different conflicts principles apply,

---

1992) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 306 (AM. L. INST. 1971)) (applying Louisiana law rather than law of state of incorporation because Louisiana had more significant relationship to lawsuit); *Multi-Media Holdings, Inc. v. Piedmont Ctr. 15 LLC*, 583 S.E.2d 262, 265 (Ga. App. 2003) (explaining, in dicta, that even if Georgia applied Restatement rules for conflicts of laws, veil-piercing would not be subject to internal affairs doctrine); *Kempe v. Ocean Drilling & Expl. Co.*, 683 F. Supp. 1064, 1072 (E.D. La. 1988) (concluding that Restatement § 307 calls for interests analysis in veil-piercing claims); *Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC*, No. C 05-3033, 2006 WL 334532, at *17 (N.D. Cal. Feb. 10, 2006) (clarifying that claim to pierce corporate veil based on alter ego theory does not clearly involve "internal" affairs of, rather than "external" affairs to, corporation); *Kelly v. Corizon Health Inc.*, No. 2:22-cv-10589, 2022 WL 16575763, at *6 (E.D. Mich. Nov. 1, 2022) (holding that internal affairs doctrine did not apply when external party was affected); *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, No. 86 CIV. 1313, 1988 WL 75262, at *4 n.8 (S.D.N.Y. July 13, 1988) (rejecting internal affairs rule for third party's claim that foreign corporate entity was alter ego of another).

[85]     462 U.S. 611, 613 (1983) (*abrogated by statute on other grounds as recognized in Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018)).

[86]     *Id.*

however, where the rights of third parties *external* to the corporation are at issue.[87]

Noting the external nature of the dispute — between the American bank and the Cuban bank — as well as the consequences of a rigid rule applying the law of the state of incorporation to veil-piercing, the Supreme Court declined to apply Cuban law.[88] Although *First National City Bank* is unusual because it involved a foreign government-owned corporation, the Court's underlying logic is persuasive: veil-piercing is not an internal corporate affair because the rights of external parties are involved.[89]

Therefore, we conclude that under Alaska law, a veil-piercing claim is not an internal affair of the corporation. Alaska courts adjudicating veil-piercing claims against foreign corporations must, consistent with Section 302, apply the law of the state of incorporation *unless* "some other state has a more significant relationship to the occurrence and the parties."

C. **Alaska Has A More Significant Interest In The Matter Than Delaware, So Alaska Law Applies.**

We finally address whether, under the interests-balancing approach described in Restatement Section 302, Alaska or Delaware law should govern KFOC's veil-piercing claim against Rieck Oil.[90] Section 302 provides: "Issues involving the rights and liabilities of a corporation . . . are determined by the local law of the state

---

[87] *Id.* at 621. (emphasis in original) (internal citation omitted) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 301, 302 cmt. a & e (AM. L. INST. 1971)).

[88] *Id.* at 622.

[89] Rieck argues that "forty out of fifty states have applied the law of the state of incorporation to veil-piercing issues." But Rieck's analysis merely identifies decisions in which the law of the state of incorporation has been applied. It is not a true measure of how many states have applied the internal affairs doctrine as a rule to determine which state's law should apply to veil-piercing.

[90] KFOC argues that balancing the respective interests favors Alaska law. Rieck does not address this issue in its briefing.

which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."[91] It goes on to explain that the law of the state of incorporation will apply "except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties."[92] The comment to this section goes on to state:

> The reasons for applying the local law of the state of incorporation carry less weight when the corporation has little or no contact with this state other than the fact that it was incorporated there. In such situations, some other state will almost surely have a greater interest than the state of incorporation in the determination of the particular issue.[93]

> This is one of those unusual cases in which a state other than the state of

incorporation has a more significant interest in having its law applied.[94] The superior

---

[91] Section 6(2) provides that the principles relevant to the choice of the applicable rule of law include:

> (a) the needs of the interstate and international systems,

> (b) the relevant policies of the forum,

> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

> (d) the protection of justified expectations,

> (e) the basic policies underlying the particular field of law,

> (f) certainty, predictability and unsiformity of result, and

> (g) ease in the determination and application of the law to be applied.

[92] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302(2) (AM. L. INST. 1971).

[93] *Id*. § 302 cmt. g.

[94] We have never directly applied the principles described in Section 6 of the Restatement to decide a choice-of-law question. We have applied other sections of the Restatement, which refine the principles of Section 6 for use in specific areas of law like contracts and torts. *Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 54 (Alaska 2001) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (AM.

court found that "Rieck Oil's sole connection to Delaware is that it was incorporated there; Rieck Oil never paid taxes, held a corporate meeting, or opened a corporate bank account in Delaware — or anywhere else." The superior court reasoned that Delaware's sole interest was "preserving its status as a favored state of incorporation."

As a general rule, applying the law of the state of incorporation to veil-piercing disputes arising out of contract cases will protect parties' expectations and promote predictability — important considerations under Section 6 of the Restatement. Had parties to a contract with a Delaware corporation thought about it, they might have expected that Delaware law would govern attempts to override limitations on the corporation's liability unless they negotiated for some other state's law to apply.

But those expectations are less justified when the corporation is no more than the alter ego of a single shareholder. Predictability is entitled to less weight when there are no other shareholders, officers, or employees who might have counted on the protections of Delaware law.

The superior court also determined that Alaska's interests in having its veil-piercing law applied are significant. The dispute concerns indemnification for liabilities of a bankrupt Alaska LLC to an Alaska Native Corporation to remediate Alaska lands used for natural gas production. Alaska has a strong interest in the fulfillment of contractual obligations to clean up its lands used for industrial purposes.[95] Protecting these tangible interests supports the application of Alaska veil-piercing law.

---

L. INST. 1971) (describing rules for determining state with most significant relationship to parties and occurrence under the principles stated in § 6)); *Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 432-33 (Alaska 2001) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (AM. L. INST. 1971) (describing rules for determining state with most significant relationship to transaction and parties in contract disputes)).

[95] *Cf. Savage Arms*, 18 P.3d at 54 (holding Alaska had more significant interest than Texas in applying its law to determine corporate successor liability for injuries caused by defective rifle, which "potentially endangered any person within a lethal vicinity while the rifle was being used in Alaska").

Because Delaware's only connection is that it was the state of incorporation for a corporation that is merely the alter ego of a single shareholder, we conclude that Alaska's interests in applying its veil-piercing law exceed Delaware's.[96]

## V. CONCLUSION

For the foregoing reasons, we VACATE the judgment of the superior court and REMAND for further proceedings consistent with this opinion.

---

[96] *See, e.g.*, *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1103-04 (E.D. Mich. 1997) (concluding that Michigan had most significant interest when "[t]he only factor pointing elsewhere is the fact that [the corporation] was incorporated in Pennsylvania"); *Kempe v. Ocean Drilling & Expl. Co.*, 683 F. Supp. 1064, 1072 (E.D. La. 1988) (noting previous cases where courts applied Louisiana law when only contact with foreign state was "the naked fact of the corporation").